UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHEL JOHNSON and ZENAIDA CALDERIN,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>YAHOO!, INC.,<br><br>　　　　Defendant. | Nos. 14 CV 2028<br>　　　14 CV 2753<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are cell phone subscribers who each received at least two text messages from defendant Yahoo!. The first: personalized text messages originally sent to plaintiffs by some acquaintance. The second: Yahoo!'s explanation for why plaintiffs received the first. While plaintiffs take no issue with the former, they contend Yahoo!'s sending of the latter violated the Telephone Consumer Protection Act.

Plaintiffs' claims can survive only if Yahoo! sent the second messages using an "automatic telephone dialing system." Yahoo! has moved for summary judgment contending the undisputed record shows that it did not. However, because there remain genuine issues of fact, the motion is denied.

**I.　Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

## II. Background

Defendant Yahoo! is widely known for its free online consumer services. [57] ¶ 5. One such service is an instant messaging client called Yahoo! Messenger, which allows registered users to send online messages to others. *Id.* ¶ 6. Of primary importance to this case, Yahoo! Messenger also allows users to send personalized messages to people's cell phones through a feature called Mobile SMS[1] Messenger Service, or PC2SMS. *Id.* ¶ 8. PC2SMS bridges the gap between the online and SMS worlds by converting the Yahoo! user's online instant message into a text message that is sent to a recipient's cell phone. *Id.* ¶ 9.

*Databases*

PC2SMS interacts, either directly or indirectly, with three relevant databases. The first is the MO/MT database, which keeps track of all the cell phone

---

[1] SMS stands for "short message service" and is another name for a text message.

numbers that PC2SMS has ever texted. [57] ¶ 18. Whenever PC2SMS texts a cell phone for the first time, it adds the number to the database. [28] ¶¶ 31, 33; [57] ¶ 18. For that reason, if a number isn't in MO/MT, it means PC2SMS has never texted it. [28] ¶ 32. MO/MT also records whether a cell phone has opted out of PC2SMS. [57] ¶ 19. If it has, Yahoo! won't text that cell phone even if a user asks it to. *Id.* ¶ 22. If the phone hasn't opted out—either because it opted into PC2SMS or because its prior decision to opt out has automatically expired—Yahoo! will send text messages to the phone as soon as a user asks. *Id.* ¶¶ 22-26.

The second database PC2SMS interacts with is the Address Book. [57] ¶ 15. This database stores the information contained in a Yahoo! user's contacts list, including the user's contacts' cell phone numbers, if any. *Id.* An Address Book service pulls information from the Address Book database and provides it to PC2SMS by means of the user's local Yahoo! Messenger application. [84] at 10 n.3.

The third database PC2SMS interacts with is the Session database, which temporarily records the numbers of cell phones that have sent "INFO" messages to Yahoo! [85] ¶¶ 34-35.[2] The Session database records these numbers so Yahoo! can send responsive text messages back to the originating cell phones. *Id.*

*Input methods*

There are two ways for a Yahoo! user to send a message to a cell phone as a text message through PC2SMS. First, the user can manually input the recipient's

---

[2] References to [85] are limited to Defendant's Responses to Plaintiffs' Statement of Additional Facts. I do not consider Yahoo!'s "replies" to plaintiffs' responses, *see* [85] at 1-35, because they are not authorized under Local Rule 56.1.

cell phone number into a dialog box that appears within the Yahoo! Messenger client. *Id.* ¶ 16. Second, the user can select the recipient's name from the user's Yahoo! contacts list (that is, if the Yahoo! user has previously inputted the recipient's cell phone number into the contacts list). *Id.* Under this latter approach, the recipient's cell phone number is pulled from Yahoo!'s Address Book database. [57] ¶ 15; [57-2] at 31:16-32:24.

*System Messages*

In addition to sending personalized user-originated messages, PC2SMS also sends "system messages." *See, e.g.*, [57] ¶¶ 27-29. For example, PC2SMS sends a "Welcome" system message[3] whenever a Yahoo! user sends a personalized message to a number that has never before received a text message from PC2SMS. *Id.* ¶ 27. Likewise, if a cell phone number opts out of receiving text messages, but then has its opt-out status expire, PC2SMS will send the number the "Welcome" system message when it receives its first post-expiration personalized message. [85] ¶ 26. Finally, PC2SMS sends a "Warning" system message[4] to any cell phone number that receives a personalized message after having failed to respond to three consecutive personalized messages. *Id.* ¶ 32.

A system message is never sent to a cell phone number wholly independent of a person-generated message. A system message is sent only if (1) a Yahoo! user

---

[3] The "Welcome" system message states: "A Yahoo! user has sent you a message. Reply to that SMS to respond. Reply INFO to this SMS for help or go to y.ahoo.it/imsms." [56] at 5.

[4] The "Warning" system message states: "To continue receiving Y! messages you need to reply to one. Or reply to this msg with RESET. Reply INFO for help or go to y.ahoo.it/imsms." [56] at 6.

4

sends the cell phone number a personalized message, or (2) the cell phone subscriber requests additional information from PC2SMS by replying "INFO." [57] ¶¶ 35-37; [85] ¶ 17 (citing [72-1] at 74:5-75:22).

*Messages to Contacts*

When a Yahoo! user sends a personalized message by selecting a recipient from her contacts list, the corresponding cell phone number is pulled from the Address Book database and PC2SMS uses it to send not only personalized messages, but also any concomitant system message. [85] ¶ 17; [57-2] at 31:16-33:15.

Yahoo! purports to "deny" this fact by (1) calling it irrelevant and immaterial, (2) arguing that it takes human intervention to send a system message, and (3) arguing that "the Address Book Database does not interact directly with the PC2SMS Service." [85] ¶ 17. Of these, only the third contention is arguably relevant to the factual question of whether the Address Book database stores and provides the number that PC2SMS uses to send system messages to users' contacts. As evidence in support of the assertion, Yahoo! cites the testimony of its employee, Amir Doron, stating that PC2SMS and the Address Book "don't interact." *Id.* (citing [57-2] at 31:16-18). The testimony that immediately follows makes clear, however, that PC2SMS and the Address Book database do interact, albeit indirectly (as Yahoo!'s brief acknowledges). [57-2] at 31:19-32:24. Thus, Yahoo! presents no evidence controverting plaintiffs' claim that the Address Book database provides the number that is used by PC2SMS in sending system messages, and so Local Rule

5

56.1 deems the fact admitted. *See* NDIL LR 56.1(a)(3) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) [i.e., the Statement of Additional Facts] will be deemed admitted unless controverted by the statement of the moving party.").

## III. Analysis

The Telephone Consumer Protection Act makes it unlawful "to make any call[5] . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). The Act defines "automatic telephone dialing system" (ATDS) as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). When Congress enacted the TCPA, it directed the Federal Communications Commission to prescribe regulations implementing the Act's requirements. *Id.* § 227(b)(2). Pursuant to this mandate, the FCC has construed the statutory term "automatic telephone dialing system" to include systems which—like so-called predictive dialers—have the capacity to dial stored numbers without human intervention. *See* 18 F.C.C.R. 14014, 14091-93 (2003); 23 F.C.C.R. 559, 566-67 (2008); 27 F.C.C.R. 15391, 15392 n.5 (2012). Notably, the FCC does not interpret the TCPA to require that an ATDS always have the capacity to use "a random or sequential number generator." *See* 18 F.C.C.R. at 14092 ("to exclude from these restrictions equipment that use predictive dialing software from the definition of

---

[5] A text message is a "call" under the TCPA. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014).

6

'automated telephone dialing equipment' simply because it relies on a given set of numbers [instead of creating and dialing 10-digit telephone numbers arbitrarily] would lead to an unintended result.").[6]

I agree with Yahoo! that the FCC's interpretation on this point conflicts with the statutory requirement that an ATDS have the capacity "to store or produce telephone numbers to be called, *using a random or sequential number generator*[.]" 47 U.S.C. § 227(a)(1) (emphasis added). And if tasked with applying only the statute's language, I would conclude that Yahoo!'s system does not constitute an ATDS because the PC2SMS service does not use a random or sequential number generator. Nevertheless, the TCPA and Hobbs Act bind me to the FCC's interpretation. *See* 47 U.S.C. § 227(b)(2); 28 U.S.C. § 2342(1).[7]

In *Satterfield v. Simon & Schuster*, the Ninth Circuit characterized the TCPA's definition of ATDS as "clear." 569 F.3d 946, 951 (9th Cir. 2009). On that basis, Yahoo! argues that I should apply *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and adhere to the statute's plain language (at the expense of the FCC's interpretation). However, the *Satterfield* court did not consider

---

[6] Yahoo!'s expert, Monica Desai, contends that "[b]ased on [her] experience at the FCC . . . the FCC has never stated that predictive dialers need not meet the statutory definition of an ATDS to be considered an ATDS under the statute." [28-4] ¶ 25; *see also* [84] at 22 ("Ms. Desai's testimony is important to show that the FCC has never changed [the TCPA's definition of ATDS]."). However, determining how the FCC has interpreted the TCPA is a question of law for the court to decide, and thus not an appropriate subject of expert opinion. I therefore decline to consider Desai's declaration on this issue.

[7] I am bound to the FCC's interpretation even though the agency expounded it in the FCC Record, and not in the Code of Federal Regulation. *See CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) (enforcing the Hobbs Act with regard to a legal defense articulated in the FCC Record).

7

whether the Hobbs Act required the district court to adopt the FCC's interpretation of the statute. For that reason, I decline to follow it and instead follow the Seventh Circuit's *CE Design* decision, in which the court recognized that "a district court may [not] proceed through step one of the *Chevron* analysis without rubbing up against the Hobbs Act's jurisdictional bar." *See CE Design*, 606 F.3d at 449.[8]

Yahoo! also cites to *Dominguez v. Yahoo!, Inc.*, in which the court ruled that Yahoo!'s PC2SMS system was not an ATDS. *See* 8 F.Supp.3d 637 (E.D. Pa. 2014). I am not persuaded by *Dominguez*, however, because that court rejected the FCC's interpretation and, instead, conducted a *Chevron* analysis—an approach *CE Design* forecloses. *See* 8 F.Supp.3d at 643 n.6; 606 F.3d at 449.[9]

Thus, consistent with the FCC's interpretations, the question before me is whether Yahoo!'s PC2SMS service has the capacity to dial numbers without human intervention.

---

[8] Yahoo! cites *Marks v. Crunch San Diego, LLC* in support of the argument that the FCC lacked statutory authority to expand the definition of ATDS because the "definitions" subsection of the TCPA did not include language giving the FCC rulemaking authority, while other subsections did. *See* -- F.Supp.3d --, 2014 WL 5422976, *2 (S.D. Cal. Oct. 23, 2014). This argument, however, is exactly the kind of attack on an FCC order that the Hobbs Act precludes me from entertaining. There is functionally no difference between saying the FCC got an interpretation wrong and saying it lacked the authority to give the interpretation in the first place. Both lines would have me "determine the validity of" an FCC decision. 28 U.S.C. § 2342(1). Moreover, the *Marks* decision was premised on *Satterfield*, which I have already declined to apply.

[9] *Dominguez* also reasoned that the FCC's interpretation is strictly limited to predictive dialers. 8 F.Supp.3d at 643 n.6. That narrow reading of the FCC's decisions is inconsistent with the FCC's rationale, and I conclude that the FCC's repeated statements that an ATDS is a system with "the capacity to dial numbers without human intervention" amounts to the FCC's binding interpretation of the statute.

8

*Capacity to Dial Stored Numbers*

Yahoo! argues that its system is not an ATDS even under the FCC's broad definition because the "PC2SMS Service simply does not 'store' or produce numbers 'to be called.'" [27] at 8. Yahoo! explains that the "Welcome" system message "can only be sent to a phone number that has not already been stored in the server that contains the database of previously notified mobile numbers." *Id*. I agree with Yahoo! that the undisputed record demonstrates that the MO/MT database does not store cell phone numbers that PC2SMS directly or indirectly pulls for the purpose of dialing numbers. While evidence suggests the database does store numbers, it does so for cross-referencing purposes only. That is, MO/MT stores the numbers to track (1) when the "Welcome" system message should be sent and (2) whether the cell phone has opted out. Neither of these functions satisfies the FCC's requirement that the ATDS pull phone numbers from the database for the purpose of dialing without human intervention. As Yahoo! put it, "[t]he fact that a message can be sent to a phone number that happens to be also stored in a database does not mean that the PC2SMS Service actually dials the number from that database . . . ." [84] at 9-10.

Nevertheless, plaintiffs have presented evidence demonstrating that Yahoo!'s PC2SMS service, in conjunction with its Address Book database, has the capacity to send text messages to numbers pulled from a database. When a user enters information about her contacts into her Yahoo! Messenger contacts list (including their phone numbers), that information is stored in the Address Book database. If

9

the user then employs the PC2SMS service to send a text message to a contact, the Address Book service pulls the contact's stored phone number from the Address Book database and provides it to PC2SMS (by means of the local application) to send the message.

Yahoo! counters by claiming that the "Address Book database does not interact with PC2SMS[.]" [84] at 10. In support of this assertion, Yahoo! cites to an expanded portion of the Doron testimony already cited above, for the point that it is the user's local application that retrieves the number from the Address Book, not PC2SMS. *Id.* at 10 n.3. This factual distinction carries no legal significance— whether PC2SMS pulls numbers from a database directly or indirectly (i.e., via the local application and Address Book service), the component parts, taken together, can constitute an automatic telephone dialing *system. Accord Griffith v. Consumer Portfolio Services, Inc.*, 838 F.Supp.2d 723, 727 (N.D. Ill. 2011) ("[W]e find no support in the statute or FCC's rulings for CPS's argument that the dialer itself must 'store' telephone numbers and/or predictive dialing software. The statute regulates 'equipment,' not 'dialers,' so it is irrelevant for our purposes that the Castel dialer works in tandem with CPS's Collections System.") (citations omitted).

There is also evidence that Yahoo!'s Session database stores cell phone numbers that are pulled for the purpose of sending text messages. *See* [85] ¶ 35. As Yahoo! admits, the "Athena Platform temporarily maintains the cellular telephone number in the Session Database while the message is being sent." *Id.* Consistent with this admission, plaintiffs' expert, Randall Snyder, explained that the Session

the user then employs the PC2SMS service to send a text message to a contact, the Address Book service pulls the contact's stored phone number from the Address Book database and provides it to PC2SMS (by means of the local application) to send the message.

Yahoo! counters by claiming that the "Address Book database does not interact with PC2SMS[.]" [84] at 10. In support of this assertion, Yahoo! cites to an expanded portion of the Doron testimony already cited above, for the point that it is the user's local application that retrieves the number from the Address Book, not PC2SMS. *Id.* at 10 n.3. This factual distinction carries no legal significance— whether PC2SMS pulls numbers from a database directly or indirectly (i.e., via the local application and Address Book service), the component parts, taken together, can constitute an automatic telephone dialing *system. Accord Griffith v. Consumer Portfolio Services, Inc.*, 838 F.Supp.2d 723, 727 (N.D. Ill. 2011) ("[W]e find no support in the statute or FCC's rulings for CPS's argument that the dialer itself must 'store' telephone numbers and/or predictive dialing software. The statute regulates 'equipment,' not 'dialers,' so it is irrelevant for our purposes that the Castel dialer works in tandem with CPS's Collections System.") (citations omitted).

There is also evidence that Yahoo!'s Session database stores cell phone numbers that are pulled for the purpose of sending text messages. *See* [85] ¶ 35. As Yahoo! admits, the "Athena Platform temporarily maintains the cellular telephone number in the Session Database while the message is being sent." *Id.* Consistent with this admission, plaintiffs' expert, Randall Snyder, explained that the Session

database stores the phone number of an incoming text message so that a responsive text message can be sent. [57-3] ¶¶ 57-77. Yahoo! argues that Snyder's declaration should be disregarded (and stricken) because his opinion is based on an assumption—not on a review of the "underlying technology or source code." [72] at 2, 9-10. However, Snyder testified that his opinion is based on analyzing "[Yahoo!'s] technical documents, [the] depositions of the fact witnesses[,] . . . flow diagrams[,] [and] flow charts." [72-1] at 58:25-59:6. Further, I do not agree with Yahoo! that Snyder's opinion is so baseless or outlandish on this particular point that it should be stricken from the summary judgment record.

Yahoo! also complains that Snyder's expert opinions are legal opinions in disguise. [72] at 13. As an example, Yahoo! finds it improper for Snyder to opine that "even if numbers are stored for just a millisecond in temporary cache or random access memory (RAM), that would be sufficient storage [under the TCPA]." *Id*. I agree with Yahoo! and thus consider Snyder's opinions only with regard to the facts of storage, and not as to whether the numbers are stored long enough to implicate the Act.[10]

*Human Intervention*

When a user sends a personalized message to a contact, it is clear that that transmission involves human intervention. The same cannot be said, though, for those instances in which—in addition to sending the personalized message—PC2SMS sends the contact a system message. For example, if the contact has

---

[10] Setting aside Snyder's assertions, the parties have not sufficiently briefed the issue of whether the TCPA contains a *de minimis* storage defense. Because resolution of this motion does not depend on it, I decline to answer that question at this time.

11

previously opted out of receiving messages from PC2SMS, but then that decision to opt out expires, PC2SMS will automatically (i.e., without human intervention) send a "Welcome" system message to the contact the first time he receives a post-expiration personalized message. Similarly, if the contact has not responded to three consecutive text messages, PC2SMS will automatically send the Address-Book-based number a "Warning" system message (in addition to any fourth personalized text message the user sends the contact). Finally, if a cell phone subscriber sends an "INFO" text message to Yahoo!, a responsive text message—which is separate and apart from the mobile originating message—will automatically be sent to the subscriber.

Yahoo! argues that these messages are not sent "without human intervention" because they never would have been sent absent the Yahoo! user's underlying personalized message (or the subscriber's "INFO" message). This argument is reasonable, but I disagree that the record is sufficient to hold, as a matter of law, that PC2SMS has no capacity to act without human intervention. Every ATDS requires some initial act of human agency—be it turning on the machine or pressing "Go." It does not follow, however, that every subsequent call the machine dials—or message it sends—is a product of that human intervention. There is some evidence to suggest that PC2SMS can pull numbers and dial them without a person ordering a specific system message. *See, e.g.*, [57-2] 86:11-87:17. That is sufficient to defeat Yahoo!'s motion for summary judgment.[11]

---

[11] A person will always be a but-for cause of any machine's action, and therefore, I conclude that the FCC's "human intervention" gloss on the statute requires more than but-for

12

*Plaintiffs' Requested Relief*

For their part, plaintiffs ask that I rule as a matter of law that "Yahoo used an ATDS[.]" Plaintiffs have raised a genuine issue of fact suggesting that when PC2SMS is paired with the Address Book database, that collective system constitutes at ATDS because it has the capacity to dial numbers from a database without human intervention—i.e., without human intervention, it is capable of sending a "Welcome" or "Warning" system message to a cell phone number pulled from the Address Book database. The same is true with regard to the Session database—PC2SMS can automatically sends responsive text messages to phone numbers it pulls from the Session database.

However, it remains to be seen whether the various components at play constitute one singular system, or multiple independent systems (some of which happening to share common components). *See, e.g.*, [84] at 10 n.3. The import being, if the PC2SMS-Address Book system is independent of the PC2SMS-manual entry system, plaintiffs will have to prove that their texts came from the former.[12]

I therefore decline to hold that Yahoo! used an ATDS in this case.

## IV. Conclusion

In case no. 14-cv-02028, Yahoo!'s motion for summary judgment [26] is denied. Johnson's motion to exclude the expert report of Monica Desai [60] is denied.

---

causation. The parties have not briefed whether a more specific definition of "human intervention" exists, and I decline to impose one at this stage of the case.

[12] Plaintiffs do not allege that they received texts as a result of replying "INFO" to PC2SMS.

In case no. 14-cv-02753, Yahoo!'s motion for summary judgment [21] is denied.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 12/11/14